**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60332

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES H. MCCLATCHY, JR.,

Defendants-Appellant.

Appeals from the United States District Court
for the Northern District of Mississippi, Greenville

April 19, 2001

Before POLITZ, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Charles H. McClatchy, Jr. ("McClatchy") appeals his conviction and sentence for conversion of pledged crops, money laundering, engaging in a monetary transaction involving criminally derived property greater than $10,000 in value, and crop insurance fraud. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

McClatchy was convicted in a jury trial on six counts of a seven count indictment involving conversion of pledged crops, money laundering, engaging in a monetary transaction involving

criminally derived property greater than $10,000 in value, and crop insurance fraud.[1]  The facts giving rise to his indictment and conviction are as follows.

McClatchy and his nephew, Charles B. McElmurray, III ("McElmurray"), were partners in 1994 in a farming partnership called the "McClatchy Planting Company" ("McClatchy Planting" or "the company").  McClatchy Planting planted, grew, and sold cotton and soybeans near Indianola in Sunflower County, Mississippi.

In the spring of 1994, the company applied for financing with the Farmers Home Administration ("FmHA") and received an emergency loan in the amount of $261,170 and a 1994 farm operating loan in the amount of $200,000.  At that time, McClatchy and McElmurray executed a security agreement in which they pledged to the FmHA their 1994 crops as collateral for the operating and emergency loans.  They also executed Form FmHA 1962-1, Agreement for the Use of Proceeds/Release of Chattel Security ("Form 1962-1").  Form 1962-1 outlined the intended use of all crop proceeds, and it also stated that both the borrower's and the FmHA's name must be listed on any checks, drafts, or money orders received by the borrower for the sale of collateral.  The company also submitted a farm plan to the FmHA.  The operating loan was due in full plus interest on January 1, 1995.  The first of seven installments of the emergency loan was also due January 1st.

_____

[1]Specifically, McClatchy was convicted on two counts of concealment, removal, disposal, and conversion to his own use of crops pledged to the Farmers Home Administration as security for loans, in violation of 18 U.S.C. § 658; two counts of conduct of financial transactions involving proceeds of the specified unlawful activity of crop conversion for the purpose of concealing and disguising the location, source, and ownership of the proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i); engaging in monetary transaction in criminally derived property greater than a value of $10,000 that was derived from the specified unlawful activity of pledged crop conversion, in violation of 18 U.S.C. § 1957(a); and one count of making false, fictitious, and fraudulent statements and representations as to material facts within the jurisdiction of an agency of the executive branch of the United States Government in violation of 18 U.S.C. § 1001.

2

McClatchy Planting's loan application and its farm plan proposed to farm cotton and soybeans on 1616 acres of land. That land was being rented by the company from McClatchy, the estate of McClatchy's deceased mother, and R.M. McClatchy. The company's farm plan indicated that the expenses for rent totaled $86,960, and McClatchy initially asked that $77,460 be advanced from the loan proceeds for rent, leaving $9,500 to be paid out of crop sales after the harvest. The revised farm plan, on which the loans were based, provided $69,860 in advance rent to be paid immediately from the loan proceeds, leaving only $17,100 of rent that would be paid from crop proceeds after the harvest.

In July 1994, the FmHA agreed to a subordination with respect to a farm operating loan obtained by McClatchy from the Bank of Ruleville in the amount of $200,000. Under the subordination agreement, McClatchy was required to have the FmHA named as a payee on all checks received from the sale of crops on which the agency had a lien. McClatchy was also required to bring those proceeds checks to the agency's office to be recorded and released.

The government produced evidence that McClatchy converted soybean and cotton sales proceeds, laundered money, engaged in a financial transaction with criminally derived property greater than $10,000 in value, and committed crop insurance fraud. The following is a summary of that evidence.

Conversion of Cotton Sales Proceeds (Count 1)

From September 1994 to March 1995, McClatchy sold 823 bales of cotton and received 14 checks, totaling $336,590.20, from Nored Cotton Company ("Nored") in Greenwood. The FmHA was not listed as a payee on any of the checks. The Bank of Ruleville was listed as a payee but received only two of the cotton sales checks, totaling $94,422.29. Two of the cotton sales checks,

3

totaling $18,000, were deposited by McClatchy into the checking account of Valley Supply Company ("Valley Supply"). Valley Supply is a straw company consisting primarily of a bank account and a post office box controlled by McClatchy. One check, for $12,998.50, was endorsed and paid to the mortgagee of McClatchy's farm land. The remaining checks were deposited by McClatchy in a McClatchy Planting bank account located in Greenwood, Mississippi. The FmHA, though not listed as a payee, endorsed and released only one cotton sales check in the amount of $72,156.79. McClatchy did not take the remaining 13 checks to the FmHA to be released.

Conversion of Soybean Sales Proceeds (Count 2)

During the fall of 1994, McClatchy Planting sold 3630.12 net bushels of 1994 soybeans to Bunge Corporation ("Bunge") for $19,840.50. Bunge made the check payable to McClatchy Planting, the FmHA, and the Bank of Ruleville. McClatchy took the check to the FmHA, which endorsed and released it to the Bank of Ruleville. The check was applied to McClatchy's subordination loan at the Bank of Ruleville. On three other sales to Bunge of the 1994 soybeans, however, McClatchy had Bunge make out checks to Valley Supply. McClatchy deposited the Valley Supply checks, totaling $18,318.80. He later withdrew the proceeds and deposited them in McClatchy Planting's checking account. Neither the FmHA nor the Bank of Ruleville received any of the proceeds.

Money Laundering (Counts 3 and 4)

McClatchy deposited proceeds from soybean sales into the Valley Supply checking account and then issued checks on that account payable to McClatchy Planting and signed "W.H. Wilson." The funds were proceeds from part of the 1994 crop. The following checks from Bunge payable to Valley Supply were handled in this manner: (1) a check in the amount of $2008.54; (2) a check in the

4

amount of $8,466.86; and (3) a check in the amount of $7,843.40. McClatchy then deposited two of those checks in McClatchy Planting's checking account at the Bank of Ruleville and one in Trustmark National Bank. W.H. Wilson, McClatchy's brother-in-law, testified that he never sold any soybeans, knew nothing about Valley Supply, and never signed any Valley Supply checks.

### Engaging in Financial Transaction With Criminally Derived Property Greater Than $10,000 in Value (Count 5)

McClatchy carried out another scheme, similar to the money laundering scheme described above, with respect to a check from Nored for a cotton sale from the 1994 crop. However, the check, which was for $13,000, was not made payable to Valley Supply. Nevertheless, McClatchy deposited the check into the Valley Supply checking account. He subsequently withdrew $10,657 of that money with a check, signed "W.H. Wilson," payable to McClatchy Planting and deposited the check into McClatchy Planting's checking account at the Bank of Ruleville.

### False Statements to a Federal Agency (Crop Insurance Fraud) (Count 7)

McClatchy obtained federal crop insurance for his 1994 cotton and soybean crops. The premium was $18,481. McClatchy reported to a crop insurance agent that McClatchy Planting had produced 5,149.6 bushels of soybeans in 1994. The insurance coverage was based on a guarantee of 8,230 bushels, and thus McClatchy received an indemnity, based on a loss of 3,030.4 bushels, for $18,174. The government introduced evidence that McClatchy's actual soybean production was 7,059.88 bushels, thus making his loss $6,904 instead of $18,174.

McClatchy and McElmurray were both indicted and pled not guilty. McElmurray was only charged with conversion of pledged crops while McClatchy was charged with conversion, money laundering, engaging in a financial transaction with criminally derived property greater than $10,000

5

in value, and crop insurance fraud. The case against them proceeded to trial, and after both sides

rested, the defendants moved for a judgment of acquittal. The trial court granted McElmurray's

motion but denied McClatchy's. After six hours of deliberations and notes were sent from the jury

to the judge indicating that the jurors were having difficulty reaching a unanimous verdict, the judge

gave the jury an <u>Allen</u> charge.[1]  Nearly two hours later, the jury returned a partial verdict, finding

McClatchy guilty on all but count six of the indictment, which was one of the charges involving false

statements to a government agency. The trial court declared a mistrial as to that count.

The trial court sentenced McClatchy to 33 months of imprisonment on each of the counts on

which he was convicted. The terms are to be served concurrently and followed by concurrent terms

of three years of supervised release on each count. The court further ordered McClatchy to pay

restitution to the FmHA in the amount of $282,752.21 and to the Risk Management Agency of the

Federal Crop Insurance Corporation in the amount of $18,174. Finally, the court ordered McClatchy

to pay a special assessment of $300. McClatchy now appeals his conviction and sentence.

DISCUSSION

I.      Sufficiency of the Evidence

McClatchy argues that the jury's verdict and the judgment of conviction against him were

against the overwhelming weight of the evidence and insufficient as a matter of law to establish guilt

beyond a reasonable doubt. As he moved for a judgment of acquittal at the close of the government's

case, the standard of review in assessing McClatchy's sufficiency of evidence challenge is "whether,

considering all the evidence in the light most favorable to the verdict, a reasonable trier of fact could

---

[1]<u>See Allen v. United States</u>, 164 U.S. 492 (1896). This type of charge urges jurors to "forego their differences and reach a unanimous verdict." <u>United States v. Heath</u>, 970 F.2d 1397, 1406 n.2 (5th Cir. 1992).

have found that the evidence established guilt beyond a reasonable doubt." United States v. Mendoza, 226 F.3d 340, 343 (5th Cir. 2000).

McClatchy claims that the "basic intent" of Form 1962-1 was to allow the farmer to sell crops in the regular course of business, pay essential family living expenses and farm operating expenses, pay anyone with a security interest in the proceeds that had priority over the FmHA, and then pay the FmHA note. McClatchy argues that the other expenses were prior liens with respect to the FmHA lien. Thus, he reasons that after totaling the amounts due on the loan from the Bank of Ruleville, rent for the tracts of land on which the company operated the farm, family living expenses, 1994 operating expenses, and costs of production, there was simply no money left for the FmHA lien.

McClatchy also points out that the FmHA lien did not apply to farm No. 2827, which is also operated by McClatchy Planting, but only to farm No. 2237. Thus, he argues, production on farm No. 2827 cannot be the subject matter of a conversion charge. He further claims that it is common practice for a farmer to maintain one or more bank accounts for a farm and that he did not draw off or siphon money from the farm's operations.

With respect to the crop conversion convictions in counts one and two, the government argues that McClatchy's intent to defraud was demonstrated by his handling of the soybean and cotton crops. The government points out that McClatchy followed the procedure required by the security agreement with respect to one sale of each crop but failed to obtain a release by the FmHA for the other sales. Also, the government challenges McClatchy's claim regarding the FmHA's standing with respect to other creditors. It asserts that McClatchy's theory that the subordination agreement somehow affected the government's standing to prosecute him for the conversion of the pledged crops is meritless.

7

Regarding the money laundering charges in counts three, four, and five, the government urges that the evidence presented at trial proved McClatchy's guilt beyond a reasonable doubt and that the record is complete as to each element of those offenses. As to the crop insurance fraud charges in count seven, the government argues that the evidence presented was sufficient for the jury to find that McClatchy knowingly falsified his soybean production on his crop insurance claim. The government asserts that McClatchy's testimony attempting to challenge this evidence was completely discredited by testimony from his nephew.

As an initial matter, we conclude that the vast majority of the crops involved in the charges against McClatchy were from farm No. 2237, not farm No. 2827, to which the FmHA lien did not apply. McClatchy's own testimony indicates that the 800 bushels of soybeans produced from farm No. 2827 were all retained for seed. Moreover, only 19 bales of the 823 bales of cotton produced by McClatchy Planting came from farm No. 2827.

We further find that there was more than sufficient evidence to support the jury's verdict against McClatchy. McClatchy's criminal purpose is evidenced by his taking two checks to the FmHA to be recorded and released but failing to follow the same procedure with the other checks. The jury could have easily inferred that he properly handled two of the checks so that he would not arouse the FmHA's suspicion and then simply converted the rest of the crop proceeds.

More importantly, the totality of the evidence presented demonstrates that McClatchy carried out an elaborate scheme whereby he converted and concealed funds that he had pledged to the FmHA. Using the name of his brother-in-law, who had no knowledge of McClatchy's scheme, McClatchy deposited and withdrew the pledged proceeds from a bank account for a company that he controlled and that consisted of only a bank account and a post office box. Compounding his

8

scheme to "beat the system," McClatchy then made false statements to the crop insurance agent so that he could recover insurance money to which he was not entitled.

The reco rd is replete with evidence regarding the elements of each of the crimes of which McClatchy was convicted. 18 U.S.C. § 658, the crop conversion statute under which McClatchy was convicted, criminalizes the knowing concealment, removal, disposal, or conversion, with intent to defraud, of "any property mortgaged or pledged to, or held by . . . the Secretary of Agriculture acting through the Farmers Home Administration." 18 U.S.C. § 658. The government presented evidence that McClatchy took only two of the crop sales checks, which were pledged to the FmHA, to be released and that he put forth much effort to hide the other checks.

18 U.S.C. § 1956(a)(1)(B)(i), the money laundering statute, criminalizes the knowing concealment or disguising of "the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956 (a)(1)(B)(i). The government demonstrated that McClatchy concealed the converted crop proceeds in the Valley Supply checking account and withdrew those funds by forging his brother-in-law's name. 18 U.S.C. § 1957(a) provides that "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity" shall be subject to criminal penalties. 18 U.S.C. § 1957(a). The government showed that one of the transactions in McClatchy's scheme involved $13,000.

18 U.S.C. § 1001 criminalizes the making of a "materially false, fictitious, or fraudulent statement or representation" to a government agency. 18 U.S.C. § 1001. The government presented evidence that McClatchy Planting sold 7,059.88 bushels of soybean to Bunge but that McClatchy reported to a crop insurance agent that McClatchy Planting had produced only 5,149.6 bushels of

9

soybean in 1994. Thus, McClatchy received insurance money to which he was not entitled.

Also, it is important to note that, in this appeal, McClatchy does not attempt to refute the evidence that the government presented at trial, which is overwhelming. Instead, he cites various Mississippi lien statutes and defends his actions by merely asserting that he legitimately exhausted the crop proceeds, leaving nothing for the FmHA's lien. We find McClatchy's reliance on the state lien statutes unavailing. These state statutes in no way provide a defense to the federal crimes of which McClatchy was convicted. None of the federal statutes under which McClatchy was convicted indicates that provisions of state lien statutes create a defense to these federal crimes.

Arguably, McClatchy's reliance on the state statutes at the time he converted the pledged crops may raise a question regarding his intent to defraud. However, as noted above, the prosecution presented evidence to the jury that McClatchy properly handled two of the proceeds checks and converted and concealed the others. This is a fact from which the jury could have concluded that McClatchy intended to defraud the FmHA. Furthermore, as noted above, McClatchy has wholly failed to address any of the evidence presented regarding the other elements of the crimes of which he was convicted. Much of that evidence also belies any argument that McClatchy acted without the intent to defraud the FmHA.

Moreover, McClatchy's assertion that he spent the crop proceeds on farm and family expenses is of no consequence. McClatchy converted funds pledged to the FmHA. He simply did as he pleased with the crop proceeds, on which the FmHA had a lien. Furthermore, given the self-dealing involved in McClatchy's operations–he pays rent to himself and his family–his argument that he used some of the money for rent seems specious.

Accordingly, considering all of the evidence in the light most favorable to the verdict, we are

10

unable to conclude that there was insufficient evidence on which to convict McClatchy.

II.     Effect of the Co-Defendant's Dismissal

McClatchy claims that because his co-defendant, McElmurray, was granted a judgment of acquittal, the verdicts against him on counts one, two, three, and four should be set aside.  He argues that because counts one and two of the indictment charge that McClatchy and McElmurray "aided and abetted each other, with the intent to defraud" and knowingly converted the pledged crops for their use, he should have been dismissed along with McElmurray.  According to McClatchy, it is legally inconsistent for one defendant to be convicted and the other to be dismissed in a "joint trial" for aiding and abetting.  Thus, he reasons, the charges in counts one and two against him fail.  He further concludes that the charges in counts three and four for money laundering should have been dismissed because they are based in part on the allegations of crop conversion from counts one and two, which fail because of their "aiding and abetting" language.

The government asserts that a careful reading of the indictment reveals that both McClatchy and McElmurray were charged in counts one and two as principal and aider and abettor.  It also distinguishes a charge of aiding and abetting from a charge of conspiracy.  The government further argues that as the case proceeded without McElmurray, the aiding and abetting language became mere surplusage in the indictment.  Moreover, the government claims that McClatchy's arguments are specious because the evidence presented at trial demonstrates that he acted alone in committing the crimes charged in the indictment.

McElmurray's acquittal did not compel the acquittal of McClatchy.  The federal aider and abettor statute, 18 U.S.C. § 2, states in part: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

11

18 U.S.C. § 2. The Supreme Court has held that under § 2 the acquittal of the principal does not require the acquittal of the aider and abettor. Standefer v. United States, 447 U.S. 10, 20 (1980). In Standefer, the Court stated that "[w]ith the enactment of [§ 2], all participants in conduct violating a federal criminal statute are 'principals.' As such, they are punishable for their criminal conduct; the fate of other participants is irrelevant." Id.; see also United States v. Musgrave, 483 F.2d 327, 331 (5th Cir. 1973) (finding that the acquittal of a person charged with being the principal does not preclude the conviction of aiders and abettors). Thus, the trial court did not err in declining to dismiss McClatchy.

III.     Jury Instructions

McClatchy argues that the trial court erred in refusing his requests for various instructions to be given to the jury. This Court reviews a district court's refusal to provide a requested jury instruction for abuse of discretion. United States v. Richards, 204 F.3d 177, 204 (5th Cir. 2000). We will reverse the district court's refusal "only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." Id.

McClatchy has failed to show that the trial court abused its discretion in refusing any of his requested instructions. The substance of the good faith and specific intent instructions that McClatchy requested was adequately covered in the court's charge. Also, the trial court's denial of McClatchy's request that the court instruct the jury to find him not guilty was not an abuse of discretion given that the court had already denied McClatchy's motion for acquittal. The court likewise did not abuse its discretion in refusing McClatchy's requested instructions containing quotes

12

from various sections of the Mississippi Code pertaining to statutory liens and security interests.  As

we previously stated, those statutes do not provide a defense to the crimes of which McClatchy was

convicted and thus are irrelevant.  Furthermore, we find no error in the court's denial of McClatchy's

requested instruction containing an excerpt from Form 1962-1.  That form had already been admitted

into evidence and was available to the jury.  With respect to the requested instructions regarding the

existence or release of FmHA security interests, the court did not abuse its discretion because those

instructions sought comment on the evidence presented.

McClatchy also argues that the trial court failed to instruct the jury regarding counts six[1] and

seven of the indictment.  Those counts pertained to the making of false statements to a government

agency.  According to McClatchy, the instruction as to those counts was not marked as "given" or

"refused" on the jury charge.  Thus, he claims that the jury received no instructions on those counts

and that plain error resulted.

The government concedes that the trial transcript does not indicate that the elements of counts

six and seven were included in the charge.  However, it points out that the omitted instruction set

forth the elements to be proved for the offense charged in those counts and that the indictment, which

the jury had, outlined the elements of the crime as well.

McClatchy did not object to the omission of the instructions on counts six and seven.  Thus,

the conviction on count seven can only be reversed if the omission was plain error.  See United States

v. Sellers, 926 F.2d 410, 417 (5th Cir. 1991).  "Error in a charge is plain only when, considering the

entire charge and evidence presented against the defendant, there is a likelihood of a grave

---

[1]The omission of the instruction for count six is irrelevant because McClatchy was not convicted
on that count.

13

miscarriage of justice." Id.  The trial court's omission "does not amount to plain error 'unless it could have meant the difference between acquittal and conviction.'"  United States v. Anderson, 987 F.2d 251, 256 (5th Cir. 1993) (quoting United States v. Contreras, 950 F.2d 232, 240 (5th Cir. 1991)).

The trial court's omission of the elements of the offense charged in count seven does not rise to the level of plain error.  As the government points out, the indictment tracks the applicable language of 18 U.S.C. § 1001 and contains all of the essential elements of the offense.  Moreover, given the weight of the evidence against McClatchy, it is unlikely that the omission of the elements caused the jury to convict him.

IV.    Exclusion of Defendant's Exhibits 6 and 7

McClatchy complains of the district court's exclusion of Defendant's Exhibits 6 and 7, which are a compilation of balance sheets, general ledgers, and a schedule of crops for 1993-1995.  A certified public accountant, called by the defense as an expert, collected the data contained in the proffered exhibits.  McClatchy claims that these exhibits were important to his core defense and were related to his intent.  He asserts that the exhibits demonstrate that all of the crop proceeds were used to pay either rent, prior lien holders, or operating expenses.

The government argues that it was unnecessary to present the entire financial summary of the farm's operation in order to determine whether or not McClatchy committed the offenses charged.  Furthermore, the government points out that the trial court nevertheless allowed extensive testimony by the accountant from the data contained in the excluded exhibits.  Thus, the government contends that McClatchy was not prejudiced by the exclusion of the exhibits.

This Court reviews a district court's admission or exclusion of evidence for abuse of discretion.  Kona Tech. Corp. v. S. Pac. Transp. Co., 255 F.3d 595, 602 (5th Cir. 2000).  "Thus, we

will not reverse a district court's evidentiary rulings unless substantial prejudice results to the complaining party." Id. McClatchy has failed to demonstrate the relevance of these exhibits to the crimes with which he was charged. Thus, we do not find that the trial court abused its discretion in excluding them.

V.     Explanation of the Absence of Acquitted Co-Defendant

McClatchy claims that the trial court erred in instructing counsel to make no reference during closing argument to the absence of co-defendant McElmurray. He also complains of the court's statement to the jury that McElmurray would no longer be participating in the trial and that the court would inform the jury of the status of McElmurray's case after the trial was concluded. Additionally, McClatchy argues that the court's interruption of defense counsel's closing argument to admonish him to refrain from referring to McElmurray was improper. According to McClatchy, the sequence of the court's instructions was extremely prejudicial to his case because (1) the jury was left to speculate about the status of McElmurray's case; (2) McClatchy was prevented from arguing joint partnership conduct in his defense; and (3) the trial court's remarks during McClatchy's closing argument could have been interpreted by the jury as an expression by the court that McClatchy was guilty. The government argues that the trial court's statements regarding the absence of McElmurray cannot fairly be interpreted as an expression by the court of its belief that McClatchy was guilty.

The trial court's statements regarding the absence of the co-defendant were appropriate and were not an indication of an opinion of McClatchy's guilt. Furthermore, the trial court later made the following statement to the jury:

> Do not assume from anything I may have said during the course of this trial that I was trying to express or did express any opinion concerning any of the issues in this case. And except for my

15

instructions to you now on the law, you can disregard anything I may have said during the trial in deciding the facts of the case.

Thus, if the trial court erred in making certain statements regarding the absence of the co-defendant, such error was harmless in light of the above instruction. Moreover, McClatchy has not articulated a statement regarding the absence of the co-defendant that would have been more appropriate than the one given by the trial court.

VI.     Allen Charge

McClatchy complains that the trial court improperly gave the jury an Allen charge. Prior to the charge, the jury was apparently having difficulty reaching a verdict. The jury sent two notes to the judge, one inquiring as to the proper method of indicating that it was unable to reach a unanimous decision and another requesting other information. The court informed the jury that it could reach a partial verdict. According to McClatchy, the jury then returned a verdict, which is not in the record, that was declared "no verdict" by the court. Again, the jury sent a note asking what would happen if they were unable to reach a verdict. The trial court subsequently gave the jury an Allen charge, and less than two hours later, it returned with a verdict.

McClatchy claims that, at the very least, the giving of the charge constituted plain error. However, he does not argue that specific aspects of the charge were prejudicial. Rather, he makes the conclusory assertion that the charge tremendously and prejudicially affected the jury. He makes slightly more specific arguments regarding the circumstances surrounding the giving of the Allen charge, claiming that those circumstances made the charge unduly coercive.

The government points out that McClatchy's claim on appeal is subject to plain error review because he did not object to the Allen charge. The government also counters that given the

16

complexity of this case, the length of deliberations following the <u>Allen</u> charge, and the discriminating nature of the verdict (the jury did not convict on count six), it cannot be said that the jury was coerced into reaching the verdict.

This Court permits trial courts "to give modified versions of the <u>Allen</u> charge, so long as the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial." <u>United States v. Clayton</u>, 172 F.3d 347, 352 (5th Cir. 1999). The trial court has broad discretion in determining whether an <u>Allen</u> charge will coerce the jury. <u>United States v. Heath</u>, 970 F.2d 1397, 1406 (5th Cir. 1992). Moreover, if a defendant failed to object to the charge at trial, the charge will be reviewed for plain error, and the conviction will not be reversed unless an error "'seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceeding.'" <u>Clayton</u>, 172 F.3d at 351 (quoting <u>United States v. Calverly</u>, 37 F.3d 160, 164 (5th Cir. 1994) (en banc)). McClatchy, through his conclusory allegations and cursory treatment of this issue, simply has not shown that the circumstances surrounding the charge caused the jury to be unduly coerced into reaching a verdict. Rather, he merely repeats the chronology of the events, which is not inherently coercive, and argues coercion. He has not demonstrated error, plain or otherwise.

VII.    Sentencing Guidelines

For sentencing purposes and pursuant to U.S.S.G. § 3D1.2(d), the trial court grouped together the six counts on which the jury found McClatchy guilty. Counts one and two (conversion of pledged crops) required the application of U.S.S.G. § 2B1.1, the general theft guideline, resulting in an adjusted offense level of 16. Counts three and four (money laundering) required the application of U.S.S.G. § 2S1.1(a)(2), which provides an adjusted offense level of 20. Count five (engaging in monetary transaction in criminally derived property greater than $10,000 in value) required the

17

application of U.S.S.G. § 2S1.2, which provides an adjusted offense level of 19. Count seven (false statements to a federal agency) required the application of U.S.S.G. § 2F1.1, the general fraud guideline, which provides an adjusted offense level of 16.

Pursuant to U.S.S.G. § 3D1.3(b), the trial court used the offense guideline that produced the highest offense level to compute the applicable guideline range because all of the counts involved offenses of the same general type. Therefore, the court used an adjusted offense level of 20, the level used for money laundering. The offense level of 20, combined with a Criminal History Category of I, produced a sentencing guideline range of 33 to 41 months of imprisonment.

McClatchy argues that his sentence should have been based on U.S.S.G. § 2F1.1, the fraud guideline. He asserts that the conduct described in counts three, four, and five (money laundering and engaging in monetary transaction in criminally derived property greater than $10,000 in value) is outside of the "heartland" of the money laundering guideline for sentencing purposes. He also claims that the pertinent conduct falls well short of the type of serious money laundering cases contemplated by the Sentencing Commission when it drafted U.S.S.G. § 2S1.1. McClatchy also complains of the loss calculations of $282,752.21 used for the theft guideline in U.S.S.G. § 2B1.1. The figure was computed by subtracting the amount of the two crop sales checks that McClatchy actually reported to the FmHA from his total cotton and soybean sales of $374,749.50.

The government asserts that the trial court properly rejected McClatchy's arguments. In considering the objection by McClatchy regarding the use of the money laundering guidelines, the trial court found that this type of case is specifically described in the money laundering statute and also noted that McClatchy's sentence had not been enhanced. The court found no reason to depart from the guidelines regarding money laundering. The court also rejected McClatchy's arguments regarding

18

the loss calculations with respect to the theft guideline. However, the theft guideline was not operative because it provided for an adjusted offense level of 16, which is less than the highest level for all of the offenses.

This Court reviews a trial court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error. United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999). The trial court properly grouped together the six counts on which McClatchy was convicted. See U.S.S.G. § 3D1.2(d); United States v. Powers, 168 F.3d 741, 753 (5th Cir. 1999) (finding that the trial court "was required to 'group' together [the defendant's] fraud and money laundering offenses because those crimes involved the same victim and involved multiple acts that were linked by a common illegal objective or part of a common scheme").

Also, regarding McClatchy's "heartland" argument, this Court has found that "a court can choose to depart downward where the particular conduct falls outside the 'heartland' of offenses considered by the Sentencing Commission." Powers, 168 F.3d at 753. However, "a court's refusal to grant a downward departure may only be reviewed 'if the refusal was based on a violation of the law.'" Id. (quoting United States v. Palmer, 122 F.3d 215, 222 (5th Cir. 1997)). In other words, this Court may not review such a refusal unless it was based on a misinterpretation of the Sentencing Guidelines. See Palmer, 122 F.3d at 222. Accordingly, because McClatchy has not shown that the trial court mistakenly applied the Sentencing Guidelines, we cannot review his "heartland" argument.

CONCLUSION

For the foregoing reasons, we AFFIRM McClatchy's conviction and sentence.

AFFIRMED.

19