RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0244P (6th Cir.)
File Name: 01a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        *v.*

No. 00-5224

BILLY JOE PRICE,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 99-00026—Thomas G. Hull, District Judge.

Submitted: June 6, 2001

Decided and Filed: July 26, 2001

Before: GUY, BOGGS, and GILMAN, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Clifton L. Corker, Johnson City, Tennessee, for Appellant. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee.

1

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge.  Billy Joe Price was indicted for (1) conspiring to distribute crack cocaine, (2) distributing crack cocaine with the assistance of a codefendant, and (3) using a telephone device to facilitate the conspiracy.  After a two-day jury trial, he was convicted on all counts and sentenced to 51 months in prison.  Price now appeals, challenging his conviction and sentence on various grounds.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.   Factual background

This case involves the actions of Price, his codefendants Carl Mosley, Angelic Murphy, and Jose Stultz, and his former girlfriend Angela Henderson.  In February of 1999, Mosley, Murphy, and Stultz moved from New York to Asheville, North Carolina, bringing marijuana and cocaine with them to sell.  Angela Henderson knew both Mosley and Stultz through her prior drug transactions with Mosley, and would travel back and forth from her residence in Johnson City, Tennessee to Asheville, North Carolina in the course of her dealings with them.

Henderson and Stultz were in Elizabethton, Tennessee on March 22, 1999, selling crack cocaine that Henderson had obtained from Stultz.  That morning, Price asked Henderson whether he could borrow some money from her.  Price had known Henderson for five years and had fathered a child with her.  Henderson refused to loan Price any money, but offered to advance him $400 worth of crack cocaine, telling him that he could sell it and "make your own money."  According to Henderson, Price had previously been unaware that she was a drug dealer.

---

### C.   Denial of downward departure

Finally, Price claims that he was entitled to a downward departure pursuant to U.S. Sentencing Guidelines § 5K2.0, arguing that his conduct was a single act of aberrant behavior.  A district court's decision not to depart downward from an established guideline range, however,  is not appealable as long as "(1) the District Court properly computed the guideline range, (2) the District Court was not unaware of its discretion to depart downward from the guideline range, and (3) the District Court did not impose the sentence in violation of law or as a result of the incorrect application of the Sentencing Guidelines." *United States v. Chalkias*, 971 F.2d 1206, 1218 (6th Cir. 1992) (internal quotation marks and citation omitted).

Here, Price does not argue that the guideline range of 51 to 63 months was improperly computed, and he makes no claim of a legal infirmity in imposing the sentence.  Nor can he successfully argue that the district court was unaware of its discretion to depart downward from the guidelines range.  The district court rejected Price's motion for a downward departure because it determined that Price's behavior was not aberrant in light of his prior criminal history, *not* because it was unaware of its authority to depart downward for aberrant behavior in general.  We therefore conclude that the district court's refusal to downwardly depart as requested by Price is not cognizable on appeal.

## III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.

argument is legally sound but factually weak for the reasons set forth in Part II.A.1. above.

Moreover, we conclude that the government presented sufficient evidence for a rational trier of fact to find that Price made a cell phone call to facilitate the conspiracy to distribute cocaine. Agent Wheat, in particular, testified that he overheard the cell phone conversation in which Price arranged to procure crack cocaine from Henderson on March 22, 1999. After Price left Wheat, other agents saw Price meeting with Henderson in the Burger King parking lot. Agent Wheat then saw Price return with the drugs that he had promised to bring. These facts are sufficient to support the charge of using a telephone device to facilitate a conspiracy to distribute crack cocaine.

## B.   Adjustment for acceptance of responsibility

Turning now to Price's sentencing, he argues that the district court incorrectly failed to reduce his offense level by two levels for acceptance of responsibility, pursuant to U.S. Sentencing Guidelines § 3E1.1. This court accords great deference to the district court's determination of whether a defendant has accepted responsibility for his offenses, and will not overturn the result reached unless it is clearly erroneous. *See United States v. Childers*, 86 F.3d 562, 563 (6th Cir. 1996).

To support his argument, Price points out that he readily admitted to selling 3.1 grams of crack cocaine, and that the only reason he chose to let the case go to the jury was to contest the conspiracy charge. But this court has held that "a defendant must accept responsibility for all counts before he is entitled to a reduction in sentence for acceptance of responsibility." *United States v. Chambers*, 195 F.3d 274, 278 (6th Cir. 1999) (rejecting the defendant's claim that exercising his right to trial on an assault count should not preclude a sentence reduction for his acceptance of responsibility on other counts). The district court therefore properly refused to grant Price two levels of reduction for acceptance of responsibility.

When Price attempted to sell the cocaine later that day, he had the misfortune of approaching an undercover drug task force officer, Agent Steve Wheat, in the parking lot of a Food City grocery store. During this meeting, Agent Wheat agreed to buy $800 worth of crack cocaine. He then overheard a cell phone conversation between Price and Henderson, during which Price asked her to bring $800 worth of crack cocaine to a nearby Burger King. (Price apparently did not want to sell Agent Wheat the original $400 worth of crack cocaine advanced to him by Henderson.) He then told Agent Wheat that he was going to get $400 worth of crack cocaine, and would sell him the rest if Agent Wheat liked it.

Price left after Agent Wheat agreed to Price's offer. Before Price returned, Agent Wheat saw Henderson and Stultz circling Agent Wheat's location in a white Ford Tempo. Price then returned, saying that he had the whole $800 worth of crack cocaine. After Agent Wheat gave Price $800 in exchange for the cocaine, Price said he had to leave because "these people would be wanting their money." Agent Wheat then radioed his backup team, telling them to follow Price. Eventually he observed Officer Cogan with the Johnson City Police Department pull over the Tempo and arrest Henderson and Stultz. He also saw Price running from the Tempo in an attempt to avoid arrest.

Several other agents also observed the arrest of Henderson, Stultz, and Price. Agents Larry Robbins and Carl Walker, who were on Agent Wheat's backup team, saw Price leave Agent Wheat to meet with Henderson and Stultz. Later, they watched a marked police car pull the Tempo over, and saw Price jump out of the car and run. Agent Walker helped pursue Price on foot while Agent Robbins assisted in the arrest of Henderson and Stultz. When Price was arrested, Agent Walker found the $800 that Agent Wheat had used to buy the cocaine on the ground next to Price and a package of marijuana in Price's pocket.

Another agent, Tim Tester, also observed the meeting in which Agent Wheat agreed to purchase cocaine from Price.

He saw Price leave Agent Wheat and drive toward the Burger King to meet with Henderson and Stultz in their Tempo. Agent Tester then watched Price leave the Tempo, enter his own car, and drive back to sell the cocaine to Agent Wheat. He followed Henderson and Stultz in their Tempo as they left the Burger King and parked beside Price's car in a nearby Kmart parking lot. Agent Tester next saw Price get out of his own car and enter the Tempo. Finally, he observed the Tempo get stopped by the police, and he helped pursue Price on foot as Price ran from the officers.

## B.    Trial background

At trial, the government called two of Price's three codefendants as witnesses. Although Mosley pled guilty to conspiring with Price, he testified during the trial that he "never met Billy Joe." Murphy had also pled guilty to the charge that she conspired with Price, but likewise testified during the trial that she had never met or had any prior dealings with him. Stultz did not take the stand.

Henderson, who had agreed to cooperate with law enforcement upon arrest, was an additional government witness. She described how Price initially approached her to borrow some money, but then detailed the drug transaction that occurred when she instead offered him crack cocaine to sell. Price elected not to testify in his own defense.

Following a two-day jury trial, Price was convicted of (1) conspiring to distribute crack cocaine between February 1, 1999 and March 24, 1999, in violation of 21 U.S.C. § 846, (2) distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and (3) using a telephone device to facilitate a felony drug offense, in violation of 21 U.S.C. § 843(b). He filed a motion for a new trial, challenging the sufficiency of the evidence against him. Price also alleged that his conviction was inconsistent with Stultz's acquittal on the charges of being a member of a drug conspiracy and of aiding and abetting Price in distributing crack cocaine. The district court found no merit to Price's claims of error.

nephew, Charles McElmurray. *See id.* at 351-53. After both sides rested their case, the two defendants moved for a judgment of acquittal. The trial court granted McElmurray's motion, but denied McClatchy's. *See id.* at 253. McClatchy then argued that because the indictment charged that he and McElmurray "aided and abetted with each other, with the intent to defraud," *id.* at 356, that he should have been dismissed along with McElmurray.

The court rejected McClatchy's contention, pointing to the government's argument that "a careful reading of the indictment reveals that both McClatchy and McElmurray were charged in counts one and two as principal and aider and abettor," and that "as the case proceeded without McElmurray, the aiding and abetting language became mere surplusage in the indictment." *Id.* at 356. We find similar reasoning applicable here. An examination of the indictment makes clear that Stultz and Price were each charged with distribution, and that the aiding and abetting language is contained in a subsidiary clause that was not essential to the viability of Count II. Thus, it was not necessary that they both be convicted in order for either to be convicted.

Price does not dispute that he violated federal law by selling crack cocaine to an undercover officer, nor does he challenge the testimony that he met with Henderson and Stultz both before and after the drug transaction. Sufficient evidence therefore existed for the jury to find, beyond a reasonable doubt, that Price was guilty of distributing crack cocaine as charged in Count II.

### 3.    *Using a telephone device to facilitate a conspiracy to distribute crack cocaine*

Finally, Price argues that the evidence was not sufficient to support the jury's finding that he was guilty of using a telephone device to facilitate the conspiracy to distribute crack cocaine. He argues that if there was insufficient evidence to find him guilty of participating in a drug conspiracy, then he cannot be found guilty for using a telephone device to facilitate that conspiracy. Price's

was a common agreement to distribute crack cocaine, and that Price knew of, intended to join, and participated in the venture.

Even though Price's alternative explanation of the March 22, 1999 episode as an isolated buyer-seller transaction is not totally implausible, this was not the version of the events that the jury chose to accept. Based upon the evidence presented, we have no grounds to disturb the jury's verdict. *See Jackson*, 443 U.S. at 319. The late date at which Price joined the conspiracy, however, was taken into account at sentencing. *See* U.S. Sentencing Guidelines Manual § 1B1.3, cmt. n.2(c)(5) (describing a hypothetical where Defendant "O" would be held accountable at sentencing for only the drug quantity involved on the one occasion that she made a delivery for her ill boyfriend, despite her knowledge of his ongoing drug-trafficking activity).

### 2. Count II charge of distributing crack cocaine

The second count of Price's indictment charged that Stultz and Price, "aided and abetted by each other, did knowingly, intentionally, and without authority, distribute a quantity of a mixture and substance containing cocaine base . . . ." Price argues that because the jury found Stultz not guilty on this count, that he too should have been acquitted.

The Supreme Court has held, however, that the acquittal of a principal does not preclude the conviction of an aider and abettor. *See Standefer v. United States*, 447 U.S. 10 (1980) (holding the defendant responsible for aiding and abetting an Internal Revenue Service agent in accepting unlawful compensation, even though the IRS agent was acquitted on the same charge). But Price argues that his situation is different because his indictment allegedly charged him and Stultz only with aiding and abetting each other, not with either of them being a principal.

A similar argument was rejected in *United States v. McClatchy*, 249 F.3d 348 (5th Cir. 2001). In that case, Charles McClatchy was indicted for conversion along with his

At the sentencing hearing, Price objected to the finding in the presentence report that he was not entitled to a downward adjustment for acceptance of responsibility. He also moved for a downward departure below the sentencing guideline range, arguing that his participation in the conspiracy was a single act of aberrant behavior. The district court overruled the objection, denied the motion, and sentenced Price to 51 months in prison. This timely appeal followed.

### II.  ANALYSIS

### A.  Sufficiency of the evidence

Price challenges the sufficiency of the evidence used to support each of the charges against him. In reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This requires us to "refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). Even circumstantial evidence may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt. *See United States v. Phibbs*, 999 F.2d 1053, 1064 (6th Cir. 1993).

### 1.  Conspiracy to distribute crack cocaine

Price first argues that there was insufficient evidence to find him guilty of participating in a conspiracy to distribute crack cocaine between February 1 and March 24, 1999. To support a conviction for conspiracy, the government was required to prove that there was an agreement to violate the drug laws, and that Price knew of and voluntarily joined in the conspiracy. *See United States v. Avery*, 128 F.3d 966, 970 (6th Cir. 1997). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Blakeney*,

942 F.2d 1001, 1010 (6th Cir. 1991) (internal quotation marks and citation omitted). "The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt." *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986) (internal quotation marks and citation omitted).

The crux of Price's argument is that the only episode connecting him with his codefendants was the drug transaction that occurred on March 22, 1999, and that no testimony was presented from which it could be inferred that an agreement to distribute cocaine existed. *See United States v. Williams*, 503 F.2d 50, 54 (6th Cir. 1974) (holding, even though there was evidence placing the defendant in a motel room emptying plastic bags of narcotics into the toilet, that there was no showing of a conspiracy to distribute drugs where the only testimony presented with regard to the defendant was that he had once met the alleged coconspirator at a party and had only gone to the motel to give this person a ride into the town). But this court has held that a single sale can be sufficient to establish a conspiracy. *See United States v. Hamilton*, 689 F.2d 1262, 1272 (6th Cir. 1982) (rejecting the defendant's argument that, because he was involved in only one sale, he could not be guilty of a conspiracy to deal in illegal explosives). In particular, "the single-sale defense applies only in two situations, neither applicable here: (1) when the buyer and seller are the only two participants and (2) where the buyer is a minor figure in a complex conspiracy so as to raise questions of whether he knew of the scope of the conspiracy." *Id.* (citing *United States v. Renfro*, 620 F.2d 569, 575 n.5 (6th Cir. 1980)).

The transaction on March 22, 1999 clearly involved more than two participants. At the very least, it was a three-way transaction between Henderson, Price, and Agent Wheat. Nor was the March 22 episode particularly complex, unlike a "larger conspiracy consisting often of smugglers, distributors, middlemen, and other buyers." *Renfro*, 620 F.2d at 575 (discussing the second element of the single-sale defense). The single-sale defense, therefore, does not apply to this case.

In addition, a defendant can be connected to a conspiracy through evidence about his interactions with another coconspirator, even if that coconspirator was not indicted, as long as there was evidence to connect the defendant to the coconspirator and the coconspirator to the conspiracy. *See United States v. Sandy,* 605 F.2d 210, 216 (6th Cir. 1979) (holding that "it is immaterial that Shiffrin [the coconspirator to whom the defendants in *Sandy* were connected] was not himself charged in the indictment; he was named as an unindicted co-conspirator and the evidence at trial connected him with the conspiracy"). It is sufficient in a "drug-chain conspiracy" to show that each member of the conspiracy realized that he was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all of the activities in furtherance of the conspiracy. *See United States v. Maliszewski*, 161 F.3d 992, 1014 (6th Cir. 1998).

In this case, the evidence demonstrates that Price negotiated the sale of $800 worth of crack cocaine to Agent Wheat, who was acting undercover. Henderson and Stultz circled Wheat's car to assess the situation before providing Price with the drugs. After delivering the cocaine, Price told Wheat that he had to go because "these people would be wanting their money." He then attempted to get the money he earned from the sale of the drugs back to Henderson and Stultz.

Although Henderson was not indicted by the police, there was ample evidence to connect her with the rest of the conspiracy, as she herself acknowledged that she was traveling with Stultz for the purpose of selling cocaine. Price, moreover, was connected to the conspiracy not only through Henderson, but also through Stultz. Law enforcement witnesses observed Price entering the Tempo and meeting with both Stultz and Henderson to give them "their money," and Henderson testified that Stultz was the source of the cocaine sold by Price. In light of this evidence regarding Price's drug sale and his connections to Henderson and Stultz, there was sufficient evidence presented at trial for a rational trier of fact to conclude beyond a reasonable doubt that there