**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 6, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 04-20120

))))))))))))))))))))))))))))

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID GONZALEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
Criminal No. 4:02-CR-288-ALL

Before KING, BARKSDALE, and PRADO, Circuit Judges.

Edward C. Prado, Circuit Judge:[*]

A jury convicted David Gonzalez of drug offenses.  Gonzalez

claims that the trial judge abused his discretion in denying his

request for a jury instruction that a Government agent cannot be

a co-conspirator.  Gonzalez also contends he was entitled to an

entrapment instruction, raises a sufficiency of the evidence

claim, and argues his sentence is in violation of the Sixth

Amendment.  For the reasons that follow, we AFFIRM Gonzalez's

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

jury conviction and sentence.

I. Background

This case involves a Bureau of Immigration Customs Enforcement ("BICE") operation to apprehend persons trafficking in narcotics. BICE Special Agent James Hearne approached Bruce Hawley Jager and asked him to cooperate in the operation. Jager had previously pled to drug charges, including possession with intent to distribute 600 kilos of cocaine, and was allowed to remain on bond to work for the Government in order to facilitate other arrests.

The facts of this case are disputed. The parties agree that in late 2001 or early 2002 Jager befriended David Gonzalez. According to the Government, Jager reported to Hearne that he had heard Gonzalez was involved in narcotics. Hearne asked Jager to talk to Gonzalez and see if Gonzalez would sell Jager drugs. Gonzalez denies that he was involved in narcotics. According to Gonzalez, from January 2002 to March 2002, Jager repeatedly asked Gonzalez to sell him drugs, and Gonzalez continuously rejected these offers, insisting that he had no knowledge of the drug business. However, the Government claims that when Jager approached Gonzalez in January or February 2002, Gonzalez said he needed to make a telephone call and agreed to meet Jager later that day. The Government contends that Gonzalez needed to call a man named "Lionel." Jager and Gonzalez did not make a deal that day.

In March 2002, Jager again began talking with Gonzalez about buying drugs. According to Gonzalez, on March 2, Jager tricked Gonzalez into loaning him money to bet on a game of pool. Jager lost that game of pool and Gonzalez lost $900. Gonzalez contends that Jager approached him and told him he was sorry about losing his money. Gonzalez asserts that Jager told him he need not worry, as long as Gonzalez was able to find some crack cocaine.

The Government's account is that Jager and Gonzalez met at a billiards hall on March 12 and were monitored by Billy Jones, a Harris County Sheriff's Officer. Jager did not wear a microphone during the meeting. The Government asserts that because Jager sensed that Gonzalez was uncomfortable during the meeting, he suggested that they strip in the bathroom so that Gonzalez could see there was no microphone. At this meeting Gonzalez gave Jager a price for four ounces of crack cocaine. Jager could not commit to the price at that time. After this meeting with Jager, Gonzalez went home where Officer Jones observed Lionel Fitzgerald visit Gonzalez.

On March 25, Jager called Gonzalez and asked him if he was ready to make the exchange. They set up a meeting the following day. Although the timing is unclear, according to Jager, at one point during the operation Gonzalez returned from a conversation with Fitzgerald with a price for drugs written on a napkin. Jager wore a recording device to the March 25 meeting, and an

agent had given Jager money to purchase the cocaine. The deal went forward as planned. During the meeting, Gonzalez made statements indicating he was familiar with the process of cooking cocaine. According to Gonzalez, after the first sale of crack cocaine, he considered the matter closed but continued to meet with Jager on a casual basis at local pool halls.

The following day, Jager again called Gonzalez and told him the buyers liked the crack cocaine. He told Gonzalez he wanted to make another deal, which the Government contends eventually took place on April 30, 2002, when officers arrested Gonzalez. However Gonzalez recounts the events immediately leading to his arrest differently. He argues that on April 30, Jager invited Gonzalez to lunch. Gonzalez brought special pool tournament t-shirts to the meeting to show Jager. Once in Jager's vehicle, officers arrested Gonzalez.

The agents found four cookies of crack cocaine in Jager's car and a small amount of powder cocaine on Gonzalez. Gonzalez contends that Jager brought the cocaine with him to the April 30 meeting. The Government states that agents searched Jager and his vehicle prior to the April 30 meeting and that there were no drugs in Jager's car at that time.

II. Procedural History

A jury convicted Gonzalez of conspiring to possess with intent to distribute 50 or more grams of cocaine, possessing with

4

intent to distribute 50 or more grams of crack cocaine, possessing with intent to distribute five or more grams of crack cocaine, and aiding and abetting the distribution of crack cocaine. The district court sentenced him to 240 months in prison, followed by 10 years supervised release. Gonzalez filed a timely notice of appeal.

III. Discussion

A. *Sears* Jury Instruction Request

Gonzalez claims the trial judge abused his discretion in denying his request for a jury instruction that a Government agent cannot be a co-conspirator.[1]

We review a district court's refusal to provide a requested jury instruction for abuse of discretion. *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001); *United States v. Morales*, 272 F.3d 284, 289 (5th Cir. 2001). We will reverse only if the requested instruction "(1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given

---

[1] The circumstances under which a jury instruction that a Government agent cannot be a co-conspirator is appropriate was articulated in *Sears v. United States*, 343 F.2d 139 (5th Cir. 1965). In *Sears*, we explained that such an instruction is pertinent when the jury may erroneously believe it can find a defendant guilty of conspiracy for agreeing to criminal activity with a Government agent or informant.

defense." *McClatchy*, 249 F.3d at 356 (internal quotations omitted).

The trial judge, in rejecting Gonzalez's request, explained that he had found, as a matter of law, that the possibility of a "true" conspiracy existed, and because there was some evidence of third-party involvement–evidence that a person other than the defendant and the Government informant was involved in the illegal activity–no additional instruction was warranted. Thus, the court concluded that the only question for the jury was whether or not the conduct of the parties constituted a conspiracy.[2]

Gonzalez's requested instruction that a Government agent

---

[2] The court's jury instruction on the elements of conspiracy was as follows:

Now, Title 21, that section I just gave you, makes it a crime to anyone to conspire with someone else to commit an offense against the laws of the United States.
A conspiracy, then, is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of partnership in crime in which each person becomes the agent for every other person or every other member.
For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt, that two or more persons directly or indirectly reached an agreement to distribute a controlled substance.
Second, that the defendant knew of the unlawful purpose of the agreement.
Third, that the defendant joined in the agreement willfully; that is, with the intent to further its unlawful purpose.
And, fourth, that the overall scope of the conspiracy involved at least 50 grams or more of a mixture or substance which contain cocaine base, commonly called crack, a Schedule Two controlled substance.

cannot be a co-conspirator was a substantially correct statement of the law, *see United States v. Goff*, 847 F.2d 149, 173 (5th Cir. 1988)("A government agent or informer cannot be a co-conspirator."), and was not substantially covered in the charge as a whole. The issue then is whether the requested instruction concerned an important point in the trial such that the failure to instruct the jury seriously impaired the defendant's ability to effectively present a defense.

A defendant may be entitled to a cautionary instruction even if there is sufficient evidence that the defendant conspired with a non-Government agent. In *Sears v. United States*, the defendant, a county sheriff, agreed to offer protection to Davis, a Government agent who was operating an illegal whiskey business. The Government presented weak evidence that persons other than Sears and Davis were involved in the illegal whiskey business. This Court stated:

> *Although the evidence was sufficient to support the conspiracy charged*, it was not the province of the jury to convict Sears merely upon finding that he had accepted money from [the Government agent] and furnished protection. This would establish only that Sears had combined with [the Government agent,] Davis, and it takes two to conspire[;] there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy. . . . *In view of the posture of the evidence and the charge actually given by the court, the jury may well have believed that it could convict Sears simply by believing that he agreed with Davis and accepted bribes from him.* Consequently, the court should have given a cautionary instruction to the effect that even if the jury believed Sears had done these things, it could

> convict only if it further believed that he did so with knowledge that [some other persons] were also involved in the illegal enterprise.

*Sears*, 343 F.2d at 142 (emphasis added).

Thus, a jury instruction that a Government agent cannot be a co-conspirator ("*Sears* instruction") is appropriate when there is some foundation in the evidence to support the defendant's theory that he only "conspired" with a Government agent, and "the jury could have followed [its] instructions and convicted the defendant of conspiracy even if it concluded that [the defendant] had conspired only with the government agent." *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir. 1984).

In Gonzalez's case, there is no foundation in the evidence to support a *Sears* instruction; both Gonzalez's and the Government's version of the facts support the conclusion that Gonzalez acted with a "true" co-conspirator. The Government presented evidence that Gonzalez received the cocaine from Fitzgerald. The Government informant observed Gonzalez negotiating a price for the cocaine with Fitzgerald, and Jager identified Fitzgerald in a photo spread as the man who provided Gonzalez with the drugs.

Although Gonzalez contends that he did not conspire with Fitzgerald, he admitted to having a drug supplier. Gonzalez discussed obtaining the cocaine from a third party

8

in a taped conversation.[3]  At trial, Gonzalez also testified that he obtained crack cocaine from a man named "T" whom he knew from the pool hall.  In addition, after his arrest, Gonzalez told agents that his source of crack cocaine was a man named "Lionel" [Fitzgerald].

Therefore, the trial judge did not abuse his discretion in denying Gonzalez's request for a *Sears* instruction.  *See United States v. Nelson-Rodriguez*, 319 F.3d 12, 39 (1st Cir. 2003)("[The legal point] that a conspiracy conviction is not possible if the defendant conspired only with government agents . . . is inapplicable to the case against [the defendant].  When there are at least two "true" conspirators, the involvement of a government agent or

---

[3] At the March 26, 2002 meeting, the following conversation transpired:

Jager: Hey . . when . . huh . . if [the buyer] likes this stuff and . . (inaudible) . . . what were we talking about earlier.

Gonzalez: He [the supplier] says he doesn't do keys but he will do four cookies . . . four cookies at a time.

Jager: Oh yeah

Gonzalez: Uh huh

Jager: That's just four ounces at a time. That's all he'll do?

Gonzalez: Yeah, for right now, you know, it's a start. you know you got to think about it that way.

In addition, in reference to Jager's request for larger quantities of drugs, Gonzalez stated, "I'll check into that cause I got a couple of boys on the North side that I could call back."

informant does not defeat the true conspirators'
culpability."). The trial court's refusal to instruct the
jury on this issue did not impair Gonzalez's ability to
present his defense.

                    B. Entrapment Instruction

    We review a district court's refusal to provide a
requested jury instruction on the issue of entrapment *de
novo*. *United States v. Gutierrez*, 343 F.3d 415, 419 (5th
Cir. 2003). "[T]o be entitled to an entrapment instruction,
a defendant bears the burden of presenting evidence of (1)
his lack of predisposition to commit the offense and (2)
some governmental involvement and inducement more
substantial than simply providing an opportunity or
facilities to commit the offense." *Id.* Gonzalez has the
burden of providing a basis for reasonable doubt on the
ultimate issue of whether criminal intent originated with
the government. *United States v. Bradfield*, 113 F.3d 515,
521 (5th Cir. 1997).

    The evidence at trial did not raise a reasonable doubt
regarding entrapment. While Gonzalez's testimony suggested
he was persistently harassed into discussing drugs with the
confidential informant, the informant's testimony, which was
corroborated by the testimony of agents involved in the
case, indicated that Gonzalez showed an interest in dealing

10

drugs.  Gonzalez also had a previous drug offense and had knowledge of the details of drug-trafficking.  The district court did not err by rejecting the entrapment instruction.

## C. Other Claims

Gonzalez also contends that the Government failed to prove the existence of a co-conspirator, claiming the evidence was insufficient to show any agreement with Fitzgerald to deal in drugs. We will affirm a jury verdict so long as there is sufficient evidence to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.  In doing so, we view the evidence in the light most favorable to the verdict.  *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd*, 462 U.S. 356 (1983).  As discussed in Part III.A above, the evidence indicates that Gonzalez agreed with Fitzgerald to sell crack cocaine, and Gonzalez's challenge to the sufficiency of the evidence is unavailing.  *United States v. Ayala*, 887 F.2d 62, 67-68 (5th Cir. 1989)(holding that evidence linking the defendant to a marihuana conspiracy was sufficient to support the defendant's conviction).

Gonzalez also argues his sentence, made pursuant to the then-mandatory guideline sentencing scheme, violated the Sixth Amendment.  He further contends that the district court should have departed downward from the guideline

sentencing range since the government entrapped him into dealing drugs.  Gonzalez raises his *Booker*[4] claim for the first time on appeal, and therefore our review is for plain error.  *See United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005), *cert. denied,* 126 S. Ct. 43 (2005), *rehearing denied*, 126 S. Ct. 718 (2005).  Gonzalez's sentence was based on an amount of crack cocaine alleged in the indictment and presented to the jury and on a statutory enhancement due to his previous conviction.  His sentence did not violate *Booker*.

We lack jurisdiction to review the denial of Gonzalez's downward departure request.  *See United States v. Rodriguez-Montelongo*, 263 F.3d 429, 431 (5th Cir. 2001)( "A court of appeals is generally without jurisdiction to review a sentencing court's refusal to grant a downward departure when its decision is based upon a determination that [a] departure was not warranted on the facts of the case before it.") (internal quotations omitted).

IV. Conclusion

For the reasons above, we affirm the judgment of the district court.

AFFIRMED.

---

[4] *See United States v. Booker*, 543 U.S. 220 (2005).